Good morning, Your Honors. My name is Peter Davids. As you know, I represent Petitioner Miguel Artea Hernandez. I'd like to reserve at least one minute for rebuttal. My client has tried for the past 20 years to gain legalization through the proper legal channels. In 1999, he retained attorney Walter Pineda to help him navigate the immigration system and ended up paying Pineda some $22,000. Pineda's representation was disastrous, and in the end, Mr. Artea would have been better off if he were unrepresented altogether. Now, Pineda's shortcomings are well known to this Court, and in 2005, the California State Bar charged Pineda with a, quote, despicable and far-reaching pattern of misconduct, end quote, including 41 counts of incompetence and 7 counts of moral turpitude. Now, in its brief, the government makes no argument or doesn't respond to our argument that Mr. Artea received ineffective assistance of counsel and that he was prejudiced by it. There's simply no argument in their brief regarding that. Instead, the government limits itself to arguing that this Court lacks jurisdiction to review Mr. Artea's claim because of a procedural bar, namely he did not exhaust his administrative remedies by filing a motion to reopen. Now, the government is simply wrong on the law. Under Title VIII of the United States Code, Section – I hate to interrupt you so early, but – I don't know. You know this recent ruling of the attorney general in this area. Do you think that impacts this case at all? I don't think – I think the case of what, Campeon or something like that? Yeah, I believe it's in re matter of Campeon, 24 INN decisions. You don't think it affects this case? In other words, you know, the argument earlier of the government is that, well, he didn't exhaust his – he didn't exhaust his administrative remedies, right, and so forth. But now that would appear to be futile because there's almost nothing to exhaust, right? Yeah, and I think that that's one reason not to require prudential exhaustion in this case, is that the attorney general has made clear that the BIA cannot recognize due process claims based on ineffective assistance to counsel. So the BIA, you know, won't recognize the very right that Mr. Artea is seeking to vindicate. So I do think that's another factor weighing against prudential exhaustion. So it's clear here that jurisdictional exhaustion doesn't apply because motions to reopen are discretionary remedies. If you look at 8 CFR Section 1003.2, it's clear that the BIA can deny a motion to reopen even if the alien is prima facie eligible for relief. And this Court's precedents are clear that motions to reopen are discretionary, and they're no bar to this Court reviewing a claim. And I would point the Court to Alcaraz v. INS and also to Padilla, Padilla v. Gonzalez and many other cases. What about the – in this case, the alien filed – or if the alien – isn't the alien barred from filing a motion because he overstayed the voluntary departure period? That's correct, Your Honor. What effect do you think that has on our ability to hear the case? Well – But to hear a – what would have been the most – ordinarily would have been a motion before the BIA. Right. This – this Court's newly issued decision, Granados-Suerga, suggests that once a voluntary departure period expires, the alien is barred from all relief. In other words, even if his or her failure to depart was due to ineffective assistance of counsel. I do think that that case is distinguishable because, in that case, this Court was reviewing a BIA order denying a motion to reopen. And in that case, this Court held, well, it's not an abuse of discretion for the BIA to deny a motion to reopen on the grounds of these voluntary departure penalties. But the – this case – I mean, there are some distinguishing factors. Number one, under the current version of the Voluntary Departure Statute, that's 8 United States Code section 1229C, an alien is subject to voluntary departure penalties only if he, quote, voluntarily fails to depart. As the BIA held in matter of Zimev-Juska, that's at 24 I&N decisions 87, an alien does not voluntarily fail to depart if his attorney does not inform him of the need to depart. So there has to be an element of choice here, of voluntariness. And the BIA itself has held that if the reason an alien can't depart is because of ineffective assistance of counsel, his attorney doesn't tell him he needs to depart, or his attorney tells him, oh, it's okay to just file a notice of appeal. I thought that in our recent case, it was an ineffective assistance of counsel claim. And isn't that similar in that there the alien overstayed and we said that it didn't matter that he – the alien's counsel was ineffective? The court did hold that, but it was in the context of reviewing a BIA order on a motion to reopen. And the court mentioned or the court noted that the petitioner in that case hadn't provided any grounds around this. And so I would say in that case, it's just the petitioner did not bring up the fact that an alien has to voluntarily fail to depart. It's not just if you didn't voluntarily depart, you're automatically barred. If you can show that your attorney prevented you from voluntarily departing, this language of the statute itself comes into play. So you think to reach your issue, we would have to say that in that whatever the recent case was, the last version of the recent case, that it didn't consider an argument that the reason that the alien didn't depart in a timely manner was the ineffectiveness of the counsel? Right. I believe there is language in that case that I can point you to, if you like, where the court says, you know, the petitioner hasn't pointed us to any way around this, in other words. There might also be another way to distinguish Granada-Suswerga. In that case, because it was a motion to reopen and this Court was reviewing what the BIA did, it's clear the BIA does not have jurisdiction or the ability to pass on the constitutionality of immigration statutes. So the BIA has to apply these voluntary departure penalties, even if doing so would violate the petitioner's due process rights. Whereas this Court does have the ability to pass on the constitutionality of immigration statutes. I'm saying, you know... Well, are you asking us to pass on the constitutionality of something? Well, if the voluntary departure penalties were applied in a way, even though the alien did not voluntarily depart, in other words, even if his failure to depart was due to the ineffectiveness of his attorney, then he's in essence being deprived of his due process claim. But wouldn't that require us to reach the question of the Attorney General's ruling? Because he's ruled that there is no due process right to... Correct. But I think in this, you know, this Court's precedents are clear, that an alien does have a due process right to effective assistance of counsel. This Court's cases for long have been clear. And as we all know, under Marbury v. Madison, it's up to the Court to state what the law is. I don't know that the Attorney General's opinion on whether or not aliens have a due process right under the Constitution is entitled to any deference in that decision. Even if it's not entitled to deference, we could agree with it. Right. Or disagree with it. Sure. And I think the Attorney General in that case encourages or requires the BIA to apply that rule and then to have it go up in the field. But to agree with it, I think in this way we'd have to, in effect, overrule some of our past precedents. That's correct. I think the Court would have to sit on bunk to overrule its part. Well, unless you consider the Attorney General's ruling intervening law. But in this... I don't know whether you can do it in the constitutional question, but we do have cases where we have taken positions and then the BIA has taken a new position and we have said that's intervening law, which persuades us. I believe in those cases the BIA was interpreting immigration statutes. So because it's the agency... I don't know whether that would apply in the case of a constitutional ruling. I don't believe so. I don't see any particular reason why the Attorney General's interpretation of the Constitution would override this. I think those cases are limited to areas where the agency is not just in immigration, but where an administrative agency is entitled to Chevron deference. Right. And then I think we have to respect what they do. Right. In this Court, however, the Attorney General is interpreting the Fifth Amendment due process clause and saying it shouldn't apply here, but this is just like any other civil case. But as we all know, immigration cases are not like any other civil case. The consequences can be dire, especially in asylum claims. And it's also a case where it's a situation where it's not due to private litigants, as it were. The government is bringing these proceedings in order to remove aliens from the country. So I do think that the Attorney General's opinion is wrong. Now, I think as I mentioned earlier, there's no jurisdictional bar to this Court hearing Mr. Artez's claim. There should also be no prudential bar. It's clear, or there are cases in this Court holding that one need not exhaust administrative remedies that are time-barred. And I'll point to the Court's cases in Altaraz v. INS and also to Hernandez-Mendoza v. Gonzalez. Here, the period for filing a motion to reopen expired in 2005. There's also cases holding that one need not exhaust administrative remedies that are futile. And here, once the voluntary departure period expired, due to Mr. Panetta's ineffectiveness Well, didn't the, at least in the past, didn't the late ineffectiveness of counsel provide an exception to the timeliness rule for motions to reopen? It did. The part about the attorney has to, the alien has to willfully depart, has to willfully, or I'm sorry, has to voluntarily fail to depart. I was thinking just in general, when there was a 30-day, 60-day, 90-day, whichever rule it was, that the ineffectiveness of counsel was a, created an exception to the timeliness rule. Yes, there are cases in the circuit that recognize equitable tolling in these circumstances. I would say in this case, you know, Mr. Artea completely relied on his attorneys at the time, and they gave him very poor advice all along the way. Oh, he got the files back two days before. That's correct. So conceivably he could have known that he was supposed to depart. That's very true, Your Honor. And I would point out that despite these time bars and despite at least potential futility, Mr. Artea has twice approached the government about joining in a motion to reopen, and on both occasions the government declined. So there's been no deliberate bypass of the administrative scheme. I would also note that there is precedent in this court for reviewing Mr. Artea's ineffective assistance of counsel claim in the first instance. In Hernandez-Mendoza v. Gonzalez, cited in our briefs, 5-37, Fed Third at 9-76, the court reviewed the petitioner's ineffective assistance of counsel claim, although he had not filed a motion to reopen. The court did the same thing in Granados v. Keisler. That's an unpublished decision from 2007. Well, but that we can't look at, I guess. I mean, whatever. Well, it is after 2007, Your Honor, so it's not likely. Is that the rule change in the rule? Yeah, the rule changed January 1, 2007, so it is. Oh, well. But you can look at it, but it's not binding precedent. Now, there is an issue in this case about whether Mr. Artea can show prejudice, and as we argue in our brief, he can. At the time of Mr. Panetta's representation, Mr. Artea was prima facie eligible for late amnesty relief. Mr. Panetta told him it was not available and didn't pursue that option at all. And I would note that even if we couldn't show prejudice in this case, when Mr. Panetta's performance was so inadequate that it amounted effectively to a denial of counsel altogether, we shouldn't have to show prejudice. And I would point the Court to its decision in Escobar-Gravaglia v. INS, where the Court held that effective denial of counsel requires remand. To a good extent, your position here depends on matters outside the record, and so you have this motion to augment or motion to supplement the record, and as you know, it's vigorously opposed. Anything more you want to add on that motion? I would say that even if the Court denies the motion to expand the record, there is precedent for this Court taking judicial notice of the state bar disciplinary proceedings. This Court has done that on a number of occasions, including Apollinar v. Mukasey. That's 5-14, Fed Third at 8-93. In Castillo-Perez v. INS, it's 2-12 at Fed Third at 5-18. And also in Granados v. Keisler, which is the unpublished decision I cited earlier. Do they need the state bar's resolution to establish ineffectiveness? We don't, Your Honor. I would say that Panetta's ineffective assistance of counsel is clear on the face of the administrative record. As I mentioned, he failed to investigate Artea's eligibility for late amnesty. He failed to develop any kind of factual basis for the amnesty and cancellation of removal claims that he did bring. He failed to appear at any of Artea's immigration hearings, and most egregiously at his merits hearing, and instead sent an unprepared associate in his place who had never met Artea, had never spoken to him, and knew nothing about his case. And finally, Panetta filed a BIA appeal brief that was almost entirely boilerplate. There were three sentences of argument at the very end, but they appear to be in a – the line spacing is different and the font appears to be different. It appears that he's cut and pasted three sentences of argument. Well, did he get the right gender of the client and the right country? That's only a D minus. That's right. That's correct, Your Honor. Let me ask you, if we were to conclude that we could consider the merits, is your case sufficiently complete for us to do that? I believe so, Your Honor. As I say, the ineffectiveness is plain on the face of the administrative act. And so you would not – do you need further briefing on that question? I know you discussed the merits. The government didn't, but I'll ask them the same question. If this Court were inclined to deny the petition based on Granada's Oswerga, I would appreciate the opportunity for additional briefing, since that decision was issued after we filed our reply brief. All right. Is there anything further before you rebuttal? No, I think I'll reserve the remainder of my time, if Your Honors don't have further questions. Thank you. Thank you. Good morning. Good morning, Your Honor. May it please the Court, Dan Goldman on behalf of the Attorney General. This Court should deny the petition for review – I'm sorry, should dismiss the petition for review for lack of jurisdiction for the reasons that we have set forth in our brief. I wanted to address a couple of questions that were raised earlier. First, Your Honor, raised the question with regard to the new Attorney General's opinion in the Compion case. It's the government's position that that does not play in this case. First, the Compion decision from the Attorney General specifically applies only prospectively, not retroactively. Second, just to clarify, unless I misheard something, what the Attorney General said specifically in that decision was, while there is no constitutional right to raise an ineffective assistance of counsel claim, that does not limit an immigrant from raising that claim. Specifically, what the Attorney General said was, the Department of Justice is not limited to the very least that the Constitution or the INA demands. So there is still an avenue of relief available for an immigrant who wants that assistance. Is it, you know, the kind of relief that has to be exhausted? We would argue that it does have to be exhausted, Your Honor. Even though it's discretionary, obviously discretionary, right? Yes. But I just wanted to address that because it was raised earlier. It is the government's position. How would that be raised? I'm sorry, Your Honor? How would that be raised, that the ineffective assistance of counsel is not dependent upon the law or the Constitution? Your Honor, the Attorney General's decision sets forth a framework for raising those claims, specifically first to the agency, and lays out, I believe, there's five different things that an immigrant would have to do. Many of them are similar to the procedures under Lozada and under Assad, but there are some slight differences. It is somewhat of a more stringent standard, perhaps, but there is a framework laid out in the Attorney General's rather long decision in that case. So there is still an avenue of relief that an immigrant could pursue. Effectively, you'd have to show that it has some binding effect on somebody, wouldn't you? I'm sorry, Your Honor? Wouldn't you have to show that it would have some binding effect on someone in order for the airline to raise that as an issue? I believe so, Your Honor. I'm not sure if I understand what you're saying. What's the binding effect? Maybe I'm not understanding. Well, I don't know whether this is the same question, but another way. Could we review the Attorney General's opinion? I don't think it's appropriate for this Court in this case. In a case, somebody goes to the Attorney General. I understand. Down the road. Pardon me? You're saying down the road, in the future, Your Honor. Yeah. I think, first, the immigrant would have to go to the Board of Immigration Appeals to follow the procedure. I want to make sure I understand your question. No, no. The BIA then says, well, we don't want to consider this. It's purely discretionary. And your question is, could then this Court review? I'm just trying to remember if there's anything in the Attorney General's opinion about that, Your Honor. I assume we couldn't if it's purely discretionary. There's no obligation to recognize that former right. It's only if the immigrant can come. I mean, you can come and ask the government to give you a million dollars. Nothing stops you. Sure. And you can come and ask for relief because of ineffective assistance of counsel. Nothing stops you. And the Attorney General says, well, I don't feel like giving you that. It's within my discretion. Your Honor, I think the question could be answered looking at the INA itself, and that limits the Courts of Appeals review of certain discretionary decisions. I don't believe. This would be one. I would want to double-check that, Your Honor, before I take an official. But I think Judge Reinhart is intimate. There's sort of this generic, I'll call it, you know, a lack of a right to judicial review because of the standardless decision. For instance, like, you know, the BIA has a discretion to grant an out-of-time reopening, right? Absolutely, Your Honor. But if it doesn't grant it, it can't be reviewed because, you know, it's not required just a purely a matter of discretion. This is that kind of decision, isn't it? It would be. I would disagree respectfully, Your Honor. This Court has held, and I believe most of the other courts have held, that the courts can review the denial, for example, of a motion to reopen or a motion of continuance. No, I'm talking about a motion to reopen that's not made timely. In other words, two years later, the petitioner says, I want to reopen my case. And the BIA has a discretion, you know, to respond to a reopen, right? Yes. But if it doesn't exercise that discretion, it's not reviewable. I think there's a two-part answer to that question, Your Honor. The courts have held unanimously that there is no jurisdiction for the courts to review the denial of sua sponte reopening. But the second part of that answer would be the courts have held almost unanimously, I think the Seventh Circuit is the exception, that the courts can review the denial of a motion to reopen, even though that is discretionary. Similarly, with ---- Oh, no, no, no. Oh, yes. But, I mean, I'm talking about out of time or, say, the, you know, third or second motion. I believe the courts have found jurisdiction to review those cases, Your Honor. Some of them may be resolved with summary affirmance motions, but not on jurisdictional grounds, other than the Seventh Circuit, Your Honor, I believe in the last year has held to the contrary. But this court can and has reviewed denials of motions to reopen, denials of motions to reopen where there's ---- Your Honor, he was only talking about untimely ones where the BIA has discretion. Sometimes it's different. One of the examples I think he was trying to give you was the ones where they can only reopen sua sponte. And when they decide not to reopen sua sponte, we can't review that. The answer is yes to that, Your Honor, but there is the availability of equitable tolling, and this court can review the denial of a motion to reopen where an immigrant raises or asks for equitable tolling. That's correct. And I think, Your Honor, that raises an important point. In this case, counsel for Mr. Arte Hernandez has said repeatedly in the briefs and again before this court that filing a motion to reopen would be futile, and therefore he should not have to do that. Certainly at this point he is out of time, but he can ask for equitable tolling. He can ask for sua sponte reopening. Certainly with regard to equitable tolling, as we've discussed, this court can review that. I think it's premature for Mr. Arte to say it's futile. I'm not even going to try when, in fact, the board doesn't. But I think, you know, I mean, that's in response to the government's position that, well, you haven't exhausted your administrative remedies, but the law of exhaustion requires exhaustion only of those remedies that are available as a matter of rights. Isn't that the law? That's correct, Your Honor. So how can that amount to non-exhaustion if you don't ask somebody to exercise a purely discretionary act? Your Honor, to try and answer that question, the lead case that Mr. Arte Hernandez is relying on is the Alcaraz case. That case relied on another case, an earlier case from this circuit, Castillo-Viagra, to find exactly that, that a motion to reopen is discretionary and specifically that it's not available as a right. The difference with this case and the Castillo-Viagra case, and therefore the difference with Alcaraz, is that in Castillo-Viagra, that's I believe a 1992 case, there was no statutory right with regard to motions to reopen. The INA had not been amended yet to include motions to reopen. That came in the mid-to-late 90s with the Arrera statutes. Now there is the INA does cover motions to reopen. So the underlying premise for Castillo-Viagra, and therefore for Alcaraz, is significantly weakened.  We would argue, therefore, that there is, that he should be required to file that motion. We're not saying, and I want to emphasize it, we're not saying that he did not receive effective counsel for, not for a second. Am I standing here and defending what Mr. Pineda did in this case or in any other case? However, there is a process. Well, one of the processes they tried, they asked the government to join in a motion to reopen. And, you know, you're not defending what Mr. Pineda did, but you're relying on it to prevent somebody from getting a hearing on the merits. Not exactly, Your Honor. I think in this case. Exactly, but when you come down to the substance of it, what's the government doing? They won't allow him to get a hearing on reopening. And then you say, correctly, you know, I wouldn't defend for a moment the lawyer who caused this problem, but we'll take advantage of it by not giving him a hearing. Your Honor, I see my time has expired. Okay. It may take you an hour to answer that question. As long as it takes, Your Honor. The difference in this case is the claim for ineffective assistance, if this Court were to look at the merits of it, says several things. But it argues, first of all, that he received ineffective assistance during his cancellation of the proceedings evaluating cancellation of removal. He's not eligible for cancellation of removal. Mr. Artea has conceded that. So there's no way that he can make a claim for ineffective assistance when he's not eligible for that form of relief. Even under this Court's standard, this Court hasn't required a showing of prejudice, but it's required that the proceedings could have been affected by the counsel's conduct. Mr. Artea is not eligible for cancellation. Therefore, there's nothing that Mr. Pineda did that could have helped him when he was not eligible and still is not eligible for cancellation. Why is he not? Because he could not show the requisite hardship to a qualifying relative, Your Honor, and he's conceded that. In I believe it's paragraph 30 of his affidavit, which is attached to the motion to supplement the record, Mr. Artea has specifically said, I'm not eligible for this form of relief. Our argument there also connects to the question that was asked before with regard to supplementing the record. This Court should not allow Mr. Artea Hernandez to supplement the record. In this case, it's almost a substitute record. It's not really a supplement. It's 276 pages. That's not simply taking consideration of a more recent country report, as this Court did in GFOR, or allowing the Court to consider a copy of an application, which was a government form. This is an entirely new record. That even more so goes to the government's point that Mr. Artea should take his claim to the agency first. If the agency agrees, then this Court never needs to rule on the ineffective assistance claim. Obviously, this is to the merits of the ineffective assistance claim. But I guess then your position is, if we were to reach the merits of this claim, we could dispose of it on the prejudice ground, right, that he's made no showing of prejudice? That's correct, Your Honor. But as Judge Reinhart asked earlier, if the Court is going to get to the merits, we would ask for the opportunity for supplemental briefing, particularly given the change in the landscape after this Court withdrew the Grenade-Osagura opinion. But that's to return a little bit to the ineffective assistance discussion. The second claim is with regard to legalization, and it was raised again here today. Mr. Artea applied for legalization. It was denied. He was found not eligible for that. Now, the only argument, the only specific argument, as to how Mr. Pineda affected Mr. Artea's ability to apply for that form of relief is on page 27 of the opening brief from Mr. Artea. The counsel says, Based on Pineda's advice, Artea had no reason to retain documentation indicating his continuous presence prior to December 1989. It's right there in their brief. The problem with that argument is that it's a statement from counsel. There's no evidence from Mr. Artea to actually support that claim. If this Court wants to look at possible prejudice, there's no possible showing of it when, number one, he was denied the relief, and, number two, there's no evidence to support the claim of counsel. And that could have come forward. I think in this case, the absence of a statement from Mr. Artea to that effect is telling. Certainly, if Mr. Artea is going to file a motion to supplement the record and include 276 pages of documentation, he could also have included a statement that says specifically, I didn't keep any of my documents once Mr. Pineda told me that I was not eligible. He didn't say that. The absence of that statement is telling in this case. So that's the claim of ineffective assistance. But if he's not eligible for any relief, then as bad as that conduct by Mr. Pineda was, there's nothing that it could have done in this case to affect Mr. Artea's eligibility for relief. I thought counsel did give one example in his argument of where he felt that he was eligible. But I'll ask him again on the cross. I believe he talked about voluntary departure, Your Honor. No, there was something else. I'll ask again. Very well, Your Honor. But in this case, I think it is all connected to the motion to supplement the record, and that's the government's point. If Mr. Artea's point is correct, that the ineffective assistance of counsel is clear on the record, then this Court doesn't need a 276-page supplement to the record. The problem with that argument is all of the cites to the record that Mr. Artea provides with regard to that argument that the ineffective assistance is clear on the record, they all relate to cancellation of removal. And as we've noted earlier, he's not eligible for cancellation of removal. It's not just me saying that. He's conceded that he's not eligible for cancellation. So the ineffective assistance is not clear on the record. Again, that all comes back to the point that the proper avenue to go through here is to go to the agency to address something Your Honor raised earlier with regard to the possibility of a joint motion to reopen. Mr. Artea has approached the agency twice. He has not, to the best of my knowledge, gone back since his son, who is now a U.S. citizen, got an immediate relative visa petition approved. I've spoken with counsel a little bit about that in preparing to come out here. I've spoken to DHS. They would consider a proposed joint motion to reopen based on the approval of a visa petition. Well, we could certainly hold a decision until you have an opportunity to do that. And, Your Honor, that's exactly where I was going with that point. If this court, one possible resolution would be for this court to simply dismiss the case. Well, no, I could hold the case. My suggestion, Your Honor, would be to dismiss it, but stay the mandate. I'm not suggesting that I'm giving you a practical alternative. I understand, Your Honor. But if this court wanted to stay the mandate and give us, I would suggest, at least 120 days, that would allow Mr. Artea's counsel to prepare a joint motion, give it to DHS. They can make a decision whether they'd want to join relatively quickly. Do you think we have a more friendly DHS coming? You wouldn't like to comment on that. But I can say, I've spoken to DHS counsel in San Francisco about this. I want to make very clear, I can't bind them to a decision, but I ask them very clearly, is this something that you would just reject out of hand? He's already had this twice. And absolutely not. And they would consider this a change in circumstances because now that his son's not only a citizen, but has that visa petition approved, there is relief immediately available. And that's what was lacking the last time that they went to the agency. So that is, as Your Honor noted, a practical solution. When you say consider it, you mean consider joining in a motion to reopen? That's correct, Your Honor. Which would alleviate the time bar. Right. The last point that I would like to make, Your Honor, is with regard to the voluntary departure issue that was argued specifically in the petitioner's briefs, but also a little bit today, if there were a joint motion to reopen or a motion to reopen based on equitable tolling, which the board granted, that voluntary departure bar becomes a non-issue. So it's a fine academic point, but it's a non-issue in, as Your Honor, to borrow Your Honor's words, in the practical sense. It would not bar the board from reopening the case, sending it back to an immigration judge for consideration of possible relief. So that issue, with all due respect to petitioner's counsel, is a red herring. And I would urge this Court not to fire it. No, no. If they reopen, the motion is not barred, then the voluntary departure issue is gone. Yes. And specifically, Your Honor, if the motion to reopen is based on ineffective assistance of counsel and part of the claim of ineffective assistance of counsel is that it prevented Mr. Artea from maintaining a voluntary departure order, that the board is not going to, if they grant the motion, the voluntary departure issue is not going to be a problem for Mr. Artea. Okay. Thank you. I want to clarify the question, which apparently was not clear enough. Following up just from my understanding of what the Attorney General has now done, you say the Attorney General has a procedure by which the alien can assert there was ineffective assistance of counsel. Yes, Your Honor. And I guess the question that I had is if the failure to follow that procedure is alleged by the alien, would that be a point that would be reviewable by us? If the failure to follow the Attorney General's new procedure is alleged by the government, Your Honor? No, the government would be alleging that. The alien would be alleging that the Attorney General's procedure was not followed in the ruling that there was no ineffective assistance of counsel. And your question then is that reviewable by this court? Your Honor, again, I would want to go back and look at the Attorney General's decision to see if it addressed that, and I'm not in a position to bind the government to a position on that today. I think it would be at least akin to, in general, the denial of a motion to reopen, which this court has exercised jurisdiction over. But, again, Your Honor, I think that's a different case for a different day, particularly given that the Attorney General's decision is very explicitly prospective only. Okay. Thank you, Your Honor. Thank you, counsel. That was very helpful. Thank you. Thank you, Your Honor. Counsel, let me start by asking whether you're interested in applying for a joint motion in view of counsel's optimistic report. He's not guaranteeing we would do it. I think we would be interested. We want to pursue all avenues of relief. So we would be interested in filing a joint motion. So if we somehow managed to give you time for the two of you to pursue that, that would be a thank you. I just want to reply to just a few points the government raised. First, I believe they're confusing with regard to whether a motion to reopen is a remedy that needs to be exhausted. They're confusing a right to file a motion to reopen versus a right to relief. And I think if you look at this Court's case, it's clear that these motions to reopen are not a bar to judicial review because the remedy is completely discretionary. And that's what you look at, not the right to file it, but whether relief is discretionary. The government argues that Mr. Arte is not eligible for cancellation of removal. And it's true. On this record, he is not eligible for cancellation of removal. And, in fact, this Court doesn't have jurisdiction to review the BIA's determination on extreme and extremely exceptional hardship. So that's the reason there's no mention of that in the brief. Well, we would have the ability to review it if the failure to present that evidence to the IJ was due to an ineffective resistance of counsel, correct? That's correct, Your Honor. And that's the reason we brought an ineffective assistance of counsel claim, one reason, rather than the cancellation of removal claim. Is it true, as your opponent seems to allege, that it's conceded that he is not eligible for? In materials that are outside the record, in this motion to supplement the record that the government vigorously opposes, there is a statement by Mr. Arte that he was never eligible for cancellation of removal. And that's part of our claim, is that Mr. Pineda should never have brought these claims, you know, never should have brought an asylum claim or a cancellation of removal claim. But there were other grounds for it. That's what I'm trying to recall, what it was you said he should have brought. Oh, the late amnesty application. The amnesty, that was it. I can ask counsel about that. The administrative record also shows there was a labor application for adjustment of status based on a labor certification. You know, in this case, because Pineda's failures were so absolute, it really is hard to have any faith in what happened before the immigration judge and before the BIA. Yeah, but all that really pertains to amnesty, right? The prejudice? Yeah, so that's correct. And I would point that even though Mr. Arte's application for late amnesty has been denied, the reason it was denied was, number one, lack of documentation, and secondly, failure to voluntarily depart. And it's correct that we don't have anything in our motion to supplement the record where Mr. Arte says, I didn't keep documents after 1989. But I would point out that none of the documents in the motion to supplement the record were created for appeal. All of those documents were preexisting. Finally, on the issue of prejudice, we don't need to show prima facie eligibility. This Court's cases are clear that all we need to show is a plausible grounds for relief. And I think late amnesty was a plausible grounds. You said he's been denied the amnesty? He has been. His late amnesty application was denied. And your argument is that the reason for that denial was lack of assistance from counsel? The reasons given by the agency were that he had insufficient documentation of his residence in the United States. And are you alleging that it was the ineffective assistance of counsel that caused the failure to provide the documents? That's correct. If Walter Pineda had raised this claim in 1991, I mean, I'm sorry, in 1999 when he was first retained, Mr. Arte may still have documentation on hand. This is a plausible grounds for relief. Was that the only reason that late amnesty was denied? Yes. The primary or really the only ground was Mr. Arte could not absolutely prove he did not have Social Security earnings for the years 1982 – I'm sorry, 1983 to 86. Now, is that – can that potential grounds of relief, is that subject to reopening or not? Or is that a final decision? I do not believe so. I believe that the late amnesty is kind of a separate process from the Board of Immigration Appeals. What I mean is since he's been denied the late amnesty once, can he apply again or, you know – Can the late amnesty? Yeah. Or can he move to reopen or is that – they're off the table now. I think it's really off the table. And one reason is that now that Mr. Arte's son is a United States citizen and that he's received a visa – Yeah, yeah. I mean, he's immediately eligible for adjustment of status were it not for this removal proceeding. Now, do you agree with your opponent that we would hear this case with respect to all issues as if the Attorney General had not issued a letter? I do think the Attorney General's decision plays into the calculus of whether prudential exhaustion should be required. Even though it's only prospective, if Mr. Arte were to go to the agency now and file a motion to reopen, the agency would apply the new standard under a matter of compion. So I do think it plays in and has an effect. And the very fact that relief is – To you means with respect to any motion that has not yet been made, or in reverse, it applies to any motion made after the date of delivery. I believe so. All right. Well, on the question of the visa, now, who has updated the visa? Mr. Arte's son is a United States citizen, and he filed a visa petition on behalf of his father. Father, okay. The petitioner in this case. And he has an approved visa now. And that – I don't know the intricacies, but that apparently makes him eligible. If the father had voluntarily departed, that wouldn't foreclose that, would it? No. If he had voluntarily departed, then he would be immediately eligible for adjustment of status. And he could – From that standpoint, the key issue is whether the voluntary departure period should be expanded. I believe that's correct, Your Honor. If he now deported, he would be ineligible for any relief of any kind. That's correct, absent some type of a waiver. All right. Well, thank you both very much. It was a really excellent argument on both sides. And don't let the fact that we're here keep you from proceeding with pursuing the government's offer to explore this. Thank you very much, Your Honor. Thank you. The case just argued is submitted.
judges: Hug, Reinhardt, Tashima